UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, | No. 19-CR-20427 |
| Plaintiff, | Hon. David M. Lawson |
| v. | |
| | Offense: |
| Hitham Noman, | 18 U.S.C. § 1960 |
| | Operating an Unlicensed Money |
| Defendant. | Transmitting Business |
| _____/ | **Maximum Penalty:** |
| | Five years (Count 2) |
| | **Maximum Fine:** |
| | Not to exceed $250,000 |
| | **Mandatory Supervised Release:** |
| | Up to 3 years |

### **GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, Matthew Schneider, United States Attorney, and Timothy Wyse, Assistant United States Attorney, respectfully recommends that the Court impose a sentence which considers both the guidelines range of **37 to 47[1] months** and the factors set forth in 18 U.S.C. § 3553(a).

---

[1] The Rule 11 agreement calculated a guidelines range of 33-41 months. This calculation, however, was based on an assumed criminal history of II. The Probation Department has calculated Noman's criminal actual history as III; by the terms of the Rule 11 agreement this raises Noman's guidelines range to 37-47 months.

1

## I.     BACKGROUND

Defendant **Hitham Noman** pleaded guilty with a Rule 11 Agreement to one count of operating unlawful money transmitting businesses in violation of 18 U.S.C. §1960. This plea was the result of his involvement in an illegal money wiring scheme designed by other individuals.

From on or about August 2014 to in or around March 2015, **Noman**, acting alone and with others (collectively designated as "the Subjects"), created multiple phony businesses and used several straw business owners or fronts in order to wire to the country of Yemen millions of dollars collected in cash from the Detroit, Michigan metropolitan area and from other states.

The Subjects' business operated as unlicensed Money Transmitting Businesses ("MTBs") and charged users of their MTBs a fee for their services. The purpose of such MTBs was to use the financial wire transfer system available to U.S. banks to move millions of dollars out of the United States to foreign locations, especially Yemen.

The Subjects arranged for and participated in accepting U.S. currency from individuals within and outside of the State of Michigan. They then created multiple phony business entities filed with the State of Michigan and used those

business entities to open business bank accounts. The Subjects used these accounts to deposit the money they had collected and to access the financial wire transfer system.

In many instances, the Subjects recruited other individuals to act as "fronts" for the creation of the business entities and for the opening of the corresponding business bank accounts. The Subjects used various methods to persuade these other individuals to act as "fronts" for them, including paying these "fronts" a flat fee or a percentage of the deposited/wire transferred amounts.

The Subjects created those business entities and opened those business bank accounts with the knowledge the entities would not function as real businesses but instead would be used only as a cover and an instrument for the depositing and wire transferring of millions of dollars of U.S. currency.

**Noman** had to create many businesses entities because the banks continued to shut down the bank accounts associated with the large cash money transfers. Whenever a bank closed one of these accounts, **Noman** would discontinue the associated business and move the activity to a new business name and at times a new bank.

During the above time frame, defendant **Noman**, personally deposited approximately **$2,858,428** in U.S. currency into the bank account of "Budget Phones," a fraudulent business, and then wire transferred these funds to the Republic of Yemen and other foreign countries. Budget Phones was not registered as a money service business with either the Financial Crimes Enforcement Network ("FinCEN") or the State of Michigan as required by law.

## II. SENTENCING GUIDELINES CALCULATIONS AND § 3553(a) FACTORS

In determining an appropriate sentence, district courts are to consider the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Booker*, 543 U.S. 220, 264 (2005). "The Guidelines should be the starting point and the initial benchmark in determining a sentence and a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (quoting *Gall v. United States*, 128 S.Ct. 586, 601 (2007) (internal quotations omitted)). "Sentences falling within the applicable Guidelines range are afforded a rebuttable presumption of reasonableness." *Id*. at 770.

In determining the appropriate sentence, the Court should not simply rely on the guidelines calculations, but should consider all of the factors in the Sentencing

Reform Act and, in particular, those set forth in 18 U.S.C. § 3553(a). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty; and (7) the need to provide restitution to any victims of the offense.

    **A.**    **Sentencing Guidelines**

        **1. <u>Guidelines Calculation</u>**

The government agrees with the Probation Department's calculation of the guidelines range, which is based on a Total Offense Level of 19 and a criminal history category of III, resulting in a range of 37-47 months.

**B.     Sentencing Reform Act Factors**

**1.     The Seriousness of the Offense**

This was a serious crime. While there is no evidence that this scheme was intended to go beyond sending money to relatives and possibly avoiding income tax, the individuals involved in it, willingly or by accident, created an international cash transfer system which could easily be used for other illegal purposes, including laundering fraudulently obtained money.

**2.     The History and Characteristics of the Defendant**

**Noman's** criminal history is taken into account by the guidelines. But it is noteworthy that **Noman**, unlike others that have received below-guidelines sentences in related cases, has a significant criminal history that has been scored by the Probation Department as Category III.

**3.     Respect for the Law and Deterrence**

White collar crime is, unfortunately, far too common. The sentence imposed in this case, as in all white collar crime cases, is important to promote respect for the law and to deter the defendant and general public from committing similar future crimes.

### 4. Need to Avoid Unwarranted Sentence Disparities

One sentencing consideration is the need to avoid unwarranted sentencing disparities amongst similarly-situated offenders. Similarly-situated offenders does include the defendants in related cases highlighted in **Noman's** sentencing memo. But, more broadly, it also includes white-collar criminals involved in other similar crimes with similar guidelines. Imposition of a sentence within the advisory guidelines range best serves "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Congress "sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct" prior to the Guidelines. *Rita v. U.S.,* 127 S. Ct. 2456, 2464 (2007).

The government acknowledges that prior defendants in related cases have been sentenced to time served, followed by a term of probation. However, a guidelines sentence would still be appropriate in this case.

## III. CONCLUSION

For all of the above reasons, the government respectfully recommends that the Court impose a sentence which considers both the guidelines range of **37 to 47 months** and the factors set forth in 18 U.S.C. § 3553(a).

                                           Respectfully submitted,

                                           MATTHEW SCHNEIDER
                                           United States Attorney

                                           s/ Timothy Wyse
                                           TIMOTHY WYSE
                                           Assistant United States Attorney
                                           211 W. Fort St., Suite 2001
                                           Detroit, Michigan 48226
                                           Telephone: (313) 226-9144
                                           E-mail: Timothy.Wyse@usdoj.gov

Dated: August 12, 2020